# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 14-10198-EFM

MICHAEL L. SHELTON,

    *Defendant.*

## MEMORANDUM AND ORDER

Michael L. Shelton moves for the Court to withdraw his plea of guilty and to suppress certain evidence. Once a court accepts a guilty plea, a defendant cannot withdraw his plea without offering a fair and just reason. Because Shelton offers no fair and just reason to support his threshold request to retract his plea of guilty, the Court denies Shelton's three motions.

### I.     Factual and Procedural Background

In December 2014, a grand jury charged Shelton with five drug and firearm offenses. In April 2015, a grand jury returned a superseding indictment that charged Shelton with the original five offenses and two additional firearm offenses based on alleged intervening misconduct. Days later at his arraignment hearing on those seven charges, Shelton entered a plea of not guilty. Two months later in early June, Shelton notified the Court that he intended to enter a plea of guilty.

The Court conducted a change of plea hearing with Shelton on June 22. Shelton appeared in person and with his original appointed counsel, Steven Gradert. Before that hearing, Shelton had entered into a plea agreement with the Government. Under that agreement, Shelton agreed to plead guilty to count three of the superseding indictment (which alleged possession of a firearm by a convicted felon unlawful under 18 U.S.C. § 922(g)(1)). Shelton agreed that the following facts demonstrate that he is guilty of count three:

> On October 21, 2014, the defendant was stopped for speeding in Minneola, Kansas by a member of the Clark County, Kansas Sheriff's Office. The defendant was the driver and sole occupant of a 2014 Nissan Maxima. After the law enforcement officer smelled the odor of burnt marijuana coming from inside the car[,] the Nissan Maxima was searched. In addition to a quantity of methamphetamine and heroin, the officer also located a stolen FNH .40 caliber semi-automatic handgun in the vehicle. The defendant was aware the firearm was in the car[,] and he exercised control over the weapon. Prior to October 21, 2014, the defendant was convicted of a felony offense and was prohibited from possessing a firearm. FNH and Ruger firearms are not produced in Kansas[,] and both firearms in this case would have traveled in interstate commerce prior to their discovery in Minneola, Kansas and Wichita, Kansas, respectively.

Shelton also agreed that he reviewed the plea agreement with his counsel, that counsel satisfactorily advised him, that he understood the plea agreement's terms, and that he agreed to its terms because he actually is guilty and not because of "threats, duress or coercion." In exchange for those and other agreements, the Government primarily agreed to dismiss the remaining six counts of the superseding indictment and to recommend that Shelton receive a 120-month sentence followed by 3 years of supervised release.

At the change of plea hearing, the Court examined Shelton's understanding of and willingness to plead guilty pursuant to the plea agreement. Before answering the Court's questions, Shelton declared an oath that he would make only true and correct statements. Shelton then stated to the Court that he received sufficient time and satisfactory assistance from

Mr. Gradert to understand the charges against him, his defenses, the terms of his plea agreement, and the consequences of pleading guilty. He stated that he understood that pleading guilty would waive his rights associated with trial and appeal. He denied entering a plea of guilty based on the occurrence of promises not contained in the plea agreement or threats, physical force, or violence against him. He stated that the facts contained in the plea agreement and the statements made in the petition to enter plea of guilty are true and accurate. And ultimately, he stated that he admitted to those facts because, in truth, he did commit the crime charged in count three. At no time during the hearing did Shelton express reluctance about executing the plea agreement; he only ever affirmed his willingness to change his plea to guilty. On these representations, the Court approved the petition to enter plea of guilty.[1] Shelton plead guilty to count three. The Court announced that it would sentence Shelton on September 8, 2015.

On August 8, 2015, Shelton filed a pro se motion to suppress. The next day, Mr. Gradert moved for the Court to withdraw Shelton's plea of guilty so that Shelton could pursue suppression relief. He also moved to withdraw himself as Shelton's counsel. He explained that Shelton indicated dissatisfaction with his position on Shelton's desire to withdraw his guilty plea. The Court granted Mr. Gradert's motion to withdraw and appointed new counsel, Mark Schoenhofer, to represent Shelton. Later, Mr. Schoenhofer filed an amended motion to suppress that raised issues substantially similar to those presented in Shelton's pro se suppression motion.

On October 29, 2015, the Court held a hearing on Shelton's motions. At that hearing, under oath, and with Mr. Schoenhofer present, Shelton disavowed his guilty plea. Both counsel

---

[1] As in the plea agreement and in his responses to the Court's change of plea colloquy, Shelton represented in the petition to enter plea of guilty that he understood his rights and obligations under the plea agreement, that he approved of Mr. Gradert's representation, and that he freely and voluntarily entered into that agreement because of his actual guilt. Both in signing that agreement and in an oral oath at the outset of the change of plea hearing, Shelton swore that the statements in the petition to enter plea of guilty were true and correct.

argued the motion to the Court. To more thoroughly consider the evidence and the law, the Court took Shelton's motion to withdraw guilty plea under advisement. The Court then received evidence and arguments regarding Shelton's suppression motions so that it remained prepared to rule on those motions following its consideration of Shelton's plea withdrawal motion.

## II.     Analysis

A defendant may withdraw a guilty plea after a court accepts the plea but before sentencing if he "can show a fair and just reason for requesting the withdrawal."[2] Seven factors typically guide a court's decision on whether to grant withdrawal: (1) whether the defendant has asserted his innocence; (2) defendant's assistance of counsel; (3) whether the plea is knowing and voluntary; (4) prejudice to the government; (5) delay in filing defendant's motion; (6) inconvenience to the court; and (7) waste of judicial resources.[3] In reference to these factors, courts may also consider the likelihood of conviction.[4] Only the first three enumerated factors, however, decide whether the defendant's reason for withdrawal is fair and just.[5] Ultimately, withdrawal "lies within the sound discretion of the district court to determine on a case by case basis when the standard is and isn't met."[6]

---

[2] Fed. R. Crim. P. 11(d)(2)(B).

[3] *United States v. Sanchez-Leon*, 764 F.3d 1248, 1258 (10th Cir. 2014).

[4] *Id.*

[5] *Id.* (internal citation and quotations omitted) ("If the defendant fails to carry his or her burden on asserted innocence, validity of the plea (whether it was given knowingly and voluntary), and ineffective assistance of counsel, the court need not address 'the remaining factors . . . because these [remaining] factors speak to the potential burden on the government and the court, rather than the defendant's *reason* for withdrawal.' ").

[6] *Id.* (quotation omitted).

**A. Fair and Just Reason**

At the hearing on Shelton's motions, Shelton explained his reason for requesting withdrawal. Shelton baldly declared that he is factually innocent and "wanted to go to trial from day one." But Shelton felt bullied and rushed into executing the plea agreement by counsel who considered the agreement Shelton's best option. So ultimately, Shelton did what he had to do in order to get the guaranteed lesser sentence available to him under the plea agreement.

**1. Asserted Innocence**

"The question here is whether the [d]efendant claims innocence as to the charge to which he pleaded."[7] "A defendant's subjective belief in his own innocence does not mandate allowing him to withdraw his plea of guilty."[8] Rather, the defendant "must make a *factual argument* that supports a legally cognizable defense."[9] The possibility that the defendant merely said what the government and the court needed to hear rather than the truth during his plea colloquy does not overcome his admission of guilt.[10] Shelton generally claims his factual innocence. He elaborates no further than saying that "there were some issues [that he] wanted to be addressed" at trial. Shelton does not explain how the Court can reconcile this allegation with his sworn admission of guilt as to count three at the change of plea hearing. And given that Shelton is a felon who was the sole driver of a car in which officers discovered weapons and drugs, the Court is inclined to find Shelton's admission of guilt more credible than his recent, unsupported contrary assertion. Because Shelton fails to present a credible claim of innocence, this factor

---

[7] *United States v. Graham*, 466 F.3d 1234, 1238 (10th Cir. 2006).

[8] *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007) (quotation omitted).

[9] *Id.*

[10] *United States v. Coates*, 483 F. App'x 744, 493 (10th Cir. 2000).

weighs against the conclusion that a fair and just reason exists for Shelton to withdraw his guilty plea.

**2. Assistance of Counsel**

A defendant challenging a guilty plea based on ineffective assistance of counsel "must show *both* (1) that counsel's performance was deficient *and* (2) that this deficiency prejudiced [his] defense."[11] To establish that counsel's performance was constitutionally deficient, Shelton must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[12] To establish prejudice, Shelton must show that, but for Mr. Gradert's alleged errors, Shelton "would not have pleaded guilty and would have insisted on going to trial."[13] Shelton shows neither.

Shelton bases his dissatisfaction with Mr. Gradert's representation on the conclusory allegation that Mr. Gradert pressured him into taking the plea deal without thoroughly addressing his concerns. Shelton does not allege that Mr. Gradert materially misinformed him. Shelton also does not clarify for the Court the specific concerns that Mr. Gradert allegedly overlooked. At best, Shelton's dissatisfaction seems to come from two facts. First, Shelton did not like having to make the difficult decision between pleading guilty to secure an essentially guaranteed lesser sentence or risking a substantially greater sentence to maintain his asserted innocence. Second, Shelton did not like Mr. Gradert's advice.[14] Concerning Shelton's difficult decision, the Court

---

[11] *Hamilton*, 510 F.3d at 1214 (quotation omitted).

[12] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[13] *Hamilton*, 510 F.3d at 1216 (quotations omitted).

[14] The Court gathers that Shelton wanted Mr. Gradert to file a suppression motion. Shelton testified that when he discussed that possibility with Mr. Gradert, Mr. Gradert advised him that filing a suppression motion might facilitate earning a more favorable plea bargain but likely would accomplish nothing more. At Shelton's change of plea hearing, Mr. Gradert represented to the Court that he had discussed with Shelton the fact that the Government's

appreciates Shelton's unease at bargaining with his liberty. It is precisely because of the tremendous interests at stake in these pervasive bargains, however, that the Court holds a change of plea hearing. The Court undertakes that hearing to satisfy itself that the defendant only purposefully enters the bargain after knowing its effects and receiving competent counsel. At Shelton's hearing, Shelton unequivocally represented to the Court, both orally and in writing, that Mr. Gradert satisfactorily assisted him. He also denied that he needed further time to consider the agreement independently, with counsel, or the Court. Shelton cannot now establish prejudice.[15]

Concerning Mr. Gradert's advice, it would entirely contradict counsels' professionalism obligations in this Court to brand counsel "ineffective" for merely conveying a realistic appraisal of the merits of defendant's case.[16] Besides, the circumstances of Shelton's case made it "perfectly reasonable for [counsel] to discuss a plea bargain with the government . . . and even to attempt to convince his client that accepting the plea bargain was in his best interest."[17] Notwithstanding Shelton's allegations, all involved in this case acknowledge Mr. Gradert's

---

plea agreement included the lowest sentence that the Government was willing to offer. Shelton plead guilty under that agreement. Later, Shelton filed a pro se suppression motion. Mr. Gradert then moved to withdraw, indicating that the attorney-client relationship deteriorated following disagreement over Shelton's desire to withdraw his guilty plea. Mr. Gradert also indicated, and the Court agreed, that it would be in Shelton's best interests for the Court to appoint new counsel to represent Shelton in his pursuit to withdraw his guilty plea and suppress certain evidence. On these facts alone, the Court is unable to say that Mr. Gradert inadequately represented Shelton.

[15] *Hamilton*, 510 F.3d at 1216 ("In light of the court's careful explanation of the plea's consequences and [defendant's] testimony that he understood those consequences, [defendant's] allegation that he would have gone to trial but for his attorney's failure to advise him . . . is insufficient to establish prejudice.").

[16] This Court adopts the Kansas Bar Association's Pillars of Professionalism, which advise all attorneys to "[b]e candid with clients about the reasonable expectations of their matter's results and costs," "[c]ounsel clients about the risks and benefits of alternatives before making significant decisions," and "[c]ounsel clients against frivolous positions." D. Kan. Rules, Pillars of Professionalism Memorandum and Order, pp. 169–71 (effective March 17, 2014). The Kansas Rules of Professional Conduct, also adopted by this Court, impose similar obligations. *See* D. Kan. Rule 83.6.1(a); Kan. R. Prof'l Conduct, Rules 1.4, 2.1, and 3.1.

[17] *United States v. Carr*, 80 F.3d 413, 419 (10th Cir. 1996).

generally estimable reputation as an experienced and skilled attorney. The Court's own observation of Mr. Gradert's performance in this case shows only that Mr. Gradert acted consistently and reasonably in Shelton's best interests.[18] Based on the evidence presented, therefore, the Court simply is not in a position to accept Shelton's conclusory allegations that Mr. Gradert so unreasonably represented him as to be ineffective. Because Shelton entered his guilty plea with the close assistance of counsel, this factor weighs against the conclusion that a fair and just reason exists for Shelton to withdraw his guilty plea.

### 3. Knowing and Voluntary

Shelton's final argument that a fair and just reason supports his request to withdraw his guilty plea depends on "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."[19] Shelton does not challenge that he knowingly entered his guilty plea. Rather, Shelton argues only that he involuntarily plead guilty. Shelton characterizes his plea as involuntary because it allegedly occurred at Mr. Gradert's insistence. Shelton explains that Mr. Gradert approached him with the possibility of a lesser sentence and that despite feeling uncomfortable with pleading guilty, Shelton did what he had to do to get the reduced sentence. Shelton now seems uncomfortable with his choice.

While "a guilty plea entered upon the advice of counsel is invalid if the plea was coerced,"[20] alleged "strong statements urging [defendant] to plea do not rise to the level of

---

[18] *See United States v. Siedlik*, 231 F.3d 744, 750 (10th Cir. 2000) (finding assistance of counsel factor to weigh against withdrawal where "skilled and respected" counsel assisted defendant).

[19] *Carr*, 80 F.3d at 416 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

[20] *Id.*

coercion."[21]  A defendant's absolute satisfaction with a plea agreement, moreover, is not a Rule 11 factor that the Court need consider in accepting a plea.[22]  Shelton's statements establish nothing more than the pressures (and retrospective discomfort) palpable in nearly every plea negotiation.  "If Defendant [felt that he] was being coerced into pleading guilty, he should have so stated" during the Court's colloquy.[23]  Consistent with Rule 11, the Court advised and questioned Shelton about his understanding of and intention to accept the plea agreement's terms and consequences of pleading guilty.  Shelton affirmed that he understood that he possessed the right to plead not guilty.  Shelton denied that force, threats, or extrinsic promises influenced his decision to plead guilty. He even confirmed his understanding that the Court would not permit him to withdraw his plea once accepted.  Still, Shelton solemnly affirmed in open court that he knowingly and voluntarily wished to plead guilty.  Shelton's "solemn declarations made in open court carry a strong presumption of verity."[24]  Those declarations made during a thorough Rule 11 colloquy also support the validity of Shelton's guilty plea.[25]  Shelton cannot overcome those declarations now with imprecise charges of coercion.  Accordingly, the Court is unable to find that Shelton's guilty plea amounted to an involuntary choice.  Like the others, this factor weighs against the conclusion that a fair and just reason exists for Shelton to withdraw his plea.

---

[21] *Sanchez-Leon*, 764 F.3d at 1260; *see also Carr*, 80 F.3d at 417 (considering plea voluntary despite allegations that attorney hounded, browbeat, and demeaned defendant for initial refusal to plea).

[22] *See* Fed. R. Crim. P. 11(b); *United States v. Jones*, 168 F.3d 1217, 1220 n.1 (10th Cir. 1999) ("the notion that a defendant may withdraw his guilty plea because he later feels that he made a poor decision has been flatly rejected by numerous courts.").

[23] *Jones*, 168 F.3d at 1220.

[24] *Sanchez-Leon*, 764 F.3d at 1259 (quotation omitted).

[25] *See Graham*, 466 F.3d at 1239; *United States v. Kramer*, 168 F.3d 1196, 1200 (10th Cir. 1999).

Because Shelton fails to show a fair and just reason for requesting withdrawal, the Court denies Shelton's request.

**B. Procedural Fairness**

Still, the Court considers the remaining factors to clarify the procedural (un)fairness of Shelton's request. The procedural fairness of a withdrawal request depends on whether the request is timely, prejudices the government, inconveniences the court, or wastes judicial resources.[26]

Under the circumstances of Shelton's request, these factors generally tilt against Shelton. Shelton requested withdrawal approximately two months after his guilty plea and one month before sentencing.[27] His request has already caused the Government to allocate resources to defend the validity of his guilty plea and to defend against his Fourth Amendment challenges.[28] His request also has caused the Court to reschedule its docket to continue his sentencing and accommodate his motions.[29] And "withdrawal of the guilty plea would inevitably lead to the expenditure of additional judicial resources."[30] While the unfairness associated with these circumstances is not overwhelming, it is appreciable and must weigh against withdrawal.

---

[26] *See Sanchez-Leon*, 764 F.3d at 1258.

[27] Without justification, "[e]ven two months is a significant period of delay in moving to withdraw a guilty plea." *United States v. Guager*, 534 F. App'x 758, 760 (10th Cir. 2013), *cert. denied*, 134 S. Ct. 953 (2014).

[28] A common, though generally minimal, form of prejudice to the government caused by withdrawal is that withdrawal often disrupts the government's work on current cases and requires reallocation of resources to defendant's case. *See Jones*, 168 F.3d at 1220; *Carr*, 80 F.3d at 420.

[29] A common, though generally minimal, form of inconvenience to the court caused by withdrawal is that withdrawal disrupts the court's docket. *See Jones*, 168 F.3d at 1220–21; *Carr*, 80 F.3d at 421.

[30] *Siedlik*, 231 F.3d at 750. Suppose that the Court grants Shelton's motions. Suppose also that after suppressing the evidence associated with counts one through five, the Government dismisses those counts. Even then, Shelton faces potential conviction for two additional charges (possession of a firearm by a convicted felon and possession of a stolen firearm). The Government represents that strong evidence supports those charges and the likelihood of conviction. The Court thus acknowledges that granting Shelton's motion now likely will place him in

One remaining unfairness overwhelmingly weighs against Shelton's request: "the effect which Defendant's position may have on limited judicial resources."[31] Shelton bases his withdrawal request on his subjective and previously undisclosed discomfort with the ordinary circumstances present in nearly every plea negotiation. Allowing withdrawal based on these circumstances would mean that the Court cannot rely fully on a defendant's statements in a change of plea hearing. Allowing withdrawal would invite each defendant to plea and then later retract that plea at his or her convenience based on generally unverifiable assertions. "Such a rule would have an enormous impact on the district courts which, as a matter of course, would have to deal with repeated requests to withdraw guilty pleas from defendants who had a change of heart about their decision to plead guilty."[32] The Court therefore declines the invitation, inherent in Shelton's request, to "unnecessarily multiply judicial proceedings to retrace matters that were inquired into exhaustively."[33] Instead, the Court emphasizes that a defendant better protects his own rights and conserves judicial resources by unambiguously expressing to counsel and the court his reservations to a plea agreement before executing that agreement and pleading guilty in open court.

On balance, Shelton fails to carry his burden of providing a fair and just reason for withdrawal of his guilty plea. Because Shelton's guilty plea is still valid, the Court finds that

---

no better position but almost certainly will consume portions of the Court's and the Government's finite resources. *Kramer*, 168 F.3d at 1202 ("allowing this case to proceed to trial would be a waste of judicial resources, as it is unlikely that a trial would produce a result any different than [defendant's] plea.").

[31] *Jones*, 168 F.3d at 1220.

[32] *Id.*

[33] *Siedlik*, 231 F.3d at 750.

...

Shelton waived all his nonjurisdictional defenses.[34]  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."[35]  The Court therefore declines to consider the substance of Shelton's suppression motions and denies those motions as waived.

**IT IS THEREFORE ORDERED** that the Defendant's Motion to Withdraw Plea of Guilty (Doc. 23), Motion to Suppress (Doc. 21), and Amended Motion to Suppress (Doc. 30) are hereby **DENIED**.

**IT IS SO ORDERED**.

Dated this 13th day of November, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[34] *United States v. Davis*, 900 F.2d 1524, 1526 (10th Cir. 1990), *cert. denied*, 498 U.S. 856 (1990).

[35] *Id.* (quoting *Tollet v. Henderson*, 411 U.S. 258, 267 (1973)).